UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STEPHEN R. HECHT and<br>SIRIMA C. HECHT, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | CIVIL ACTION FILE<br>NO: 1:05cv0609-BBM |
| GMAC MORTGAGE CORPORATION<br>d/b/a DITECH.COM | )<br>)<br>)<br>) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT**

COME NOW Plaintiffs and file their first amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure against the Defendant, before any responsive pleading has been served, as follows:

JURISDICTION AND VENUE

1.

Plaintiffs are husband and wife and are citizens of Florida who own real property in Forsyth County, Georgia. This real property consists of two improved lots located at 8940 Old Keith Bridge Road, Gainesville, Georgia and identified as Lot 5 and Lot 5A in the real property records of Forsyth County, Georgia.

2.

Defendant is a Pennsylvania corporation with its principal place of business in Horsham, Pennsylvania. Defendant is doing business in the State of Georgia and may be served with the summons and complaint by service upon its registered agent for service of process, Corporation Process Company, 180 Cherokee Street, N.E., Marietta, Georgia 30060.

3.

Defendant is subject to the jurisdiction of this Court and venue is proper.

## COUNT I: BREACH OF CONTRACT

4.

Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 3 of this complaint against Defendant with the same force and effect as if they had been fully restated herein.

5.

In June 1999, Plaintiffs refinanced their mortgage on both Lots 5 and 5A with Defendant. At this time, Lot 5A included a house and Lot 5 was unimproved. The new loan was to be secured by both lots so that Defendant would continue to have an equity cushion on both lots. Defendant incorrectly recorded its mortgage solely and entirely on Lot 5 by mistake.

6.

In September 2002, Plaintiffs contacted several lenders in an effort to refinance Defendant's loan on Lot 5 and Lot 5A at a lower interest rate and to take additional cash out in order to pay off higher interest rate credit card loans. The lenders informed Plaintiffs of Defendant's incorrectly recorded mortgage and that they could not refinance the loan until the title issues were resolved.

7.

Plaintiffs immediately contacted Defendant and requested that that their title immediately be cleared up so that they could obtain the needed refinancing before interest rates increased.

8.

Although Defendant admitted that it had improperly recorded its lien and initially agreed to correct the matter promptly, Defendant later required Plaintiffs to pay an additional $22,000.00 to reduce their loan balance before it would correct its mistake. Defendant took over a year to clear Plaintiffs' title and only did so after Plaintiffs retained a lawyer to pursue a claim for slander of title.

9.

After Plaintiffs' title was finally cleared, Mr. Hecht wrote a letter to Defendant complaining of the treatment he received and the damages he suffered

as a result. Defendant did not respond to this letter until after Plaintiffs refused to continue paying their mortgage to Defendant unless the matter was resolved.

10.

Defendant admitted fault and agreed not to report the defaulted mortgage to the credit reporting agencies and not to institute foreclosure proceedings while the parties were discussing settlement. Despite this promise, Defendant reported Plaintiffs' loan as delinquent to all three of the major credit reporting agencies (Experian, Equifax, Transunion) and instituted foreclosure proceedings in Forsyth County.

11.

Defendant finally agreed to settle Plaintiffs' claims by refinancing the two separate loans on Lot 5 and Lot 5A (including its own loan on Lot 5, *i.e.*, the loan Plaintiffs had refused to pay until their claims were settled) at 4.75% and by paying Plaintiffs $10,000. A true and correct copy of the Settlement and Release Agreement is attached hereto as Exhibit A.

12.

The Settlement and Release Agreement provided that Mr. Hecht would release Defendant for all claims "from the beginning of time to the date hereof." The Settlement and Release Agreement, drafted and provided by the Defendant, is

dated September 3, 2004, signed by Mr. Hecht October 11, 2004, and signed by Defendant on December 15, 2004. Mrs. Hecht did not sign the Settlement and Release Agreement.

13.

On or about December 14, 2004, Defendant closed both of the loans pursuant to the Settlement and Release Agreement. The Settlement and Release Agreement also provided as follows:

> GMACM will, within twenty (20) days of the execution of the Agreement, issue corrections or amendments to the credit reporting agencies through the preparation of a Universal Data Form (or similar form regularly used by GMACM) to correct or supplement information about payment status provided to consumer reporting agencies, requesting that such agency(ies) remove references on Claimant(s)' consumer reports to any arrearages and to any late payments on GMAC Loan # 655134087.

Defendant failed to request that the credit reporting agencies remove any reference to its loan being in arrears as expressly promised. As of the date of the filing of the original complaint, all three of the major credit reporting agencies (Experian, Equifax, Transunion) show that Defendant's first loan to Plaintiffs, which was

refinanced by the Defendant on December 14, 2004, is in default, more than 120 days past due, and that the foreclosure process has started. Plaintiffs' credit scores are significantly lower than they were before Defendant's false reports.

14.

Plaintiffs, through counsel, notified Defendant that their account was still being reported as delinquent and that their property was still being advertised for foreclosure after the execution of the Settlement and Release Agreement. Plaintiffs were again assured that the matter would be remedied.

15.

As late as December 22, 2004, Defendant continued to advertise the notice of sale under power of Plaintiff's property in the Forsyth County News. A true and correct copy of the December 22, 2004 advertisement is attached hereto as Exhibit B.

16.

Defendant's actions in failing to rectify the inaccurate credit report as expressly agreed, and in advertising the false allegation that the Plaintiffs' defaulted on their mortgage obligations in a newspaper of general circulation in Forsyth County, has irreparably damaged Plaintiffs' reputation and credit.

17.

On or about January 11, 2005, Plaintiffs' applied for a $300,000 construction loan from United Community Bank in Cumming, Georgia so that they could build a house on Lot 5 and move to Georgia. Mr. Hecht is a home inspector and his employer has already offered to transfer Mr. Hecht to Georgia to manage his employer's new Atlanta office. Mr. Hecht is also a licensed home builder in Cumming and had intended on continuing his home building business in Cumming as he had for over five years before moving to Florida in September 2000. Although Mr. Hecht was a long-standing and valued customer of United Community Bank and had received numerous construction loans from this bank in the past, this loan was denied due to the "repossession, collection action or judgment" falsely reported by Defendant. A true and correct copy of the Adverse Action Notice from the bank is attached hereto as Exhibit C.

18.

Mr. and Mrs. Hecht had secured a contract on an investment property in Thailand in September 2004 and gave the seller a non-refundable $5,000 earnest money deposit. Plaintiffs were required to close within six months. The Hechts intended to borrow the 3,500,000 baht (approximately $90,000 U.S.) purchase price in the United States due to their established good credit here. However, the

Hechts were unable to obtain adequate financing due to Defendant's improper foreclosure action and false credit reporting. Plaintiffs obtained a verbal extension of the contract while they attempted to get Defendant to live up to its promise to repair Plaintiffs' credit.

19.

After Plaintiffs filed their complaint, Defendant provided Plaintiffs with a "walk around letter" assuring potential lenders that the negative report from Defendant on Plaintiffs' credit report was erroneous. A true and correct copy of this letter is attached hereto as Exhibit D. Plaintiffs' banker indicated that the letter would allow Plaintiffs to obtain credit, but would not allow Plaintiffs to obtain the best interest rate they would have qualified for with their formerly perfect credit scores.

20.

At a meeting between the Plaintiffs and Defendant's representative on April 14, 2005, Defendant finally caused the Universal Data Form to be submitted to the credit reporting agencies as required by the 2004 settlement agreement. The Universal Data Form is a simple one page form that probably took ten minutes to complete.

21.

Believing that Defendant had finally fixed their credit as promised, Plaintiffs reapplied to refinance their home in Florida. Plaintiffs were again told that the negative credit references had not been completely removed, but that they could still obtain the loan with a 6.5% interest rate. Plaintiffs were informed that if GMAC had removed the negative credit references as promised, they would have been able to obtain the same loan at 5.75% at a savings of $51,502.73 over the life of the loan. If GMAC had removed the negative credit references in January 2005 as promised, they would have been able to obtain the same loan at an even lower interest rate with even more savings over the life of the loan. Desperate to obtain the loan in order to close on the Thailand property and pay off higher interest rate credit cards, the Hechts closed on the loan at the 6.5% interest rate on April 29, 2005.

22.

Finally able to close on the property in Thailand, the Hechts contacted the seller to arrange a new closing date. The seller informed the Hechts that the property had been transferred to someone else. According to a Thai appraisal of the property, the property was worth approximately $60,000 more than the contract price. Plaintiffs also lost their $5,000 earnest money deposit.

21.

Believing that Defendant had finally fixed their credit as promised, Plaintiffs reapplied to refinance their home in Florida. Plaintiffs were again told that the negative credit references had not been completely removed, but that they could still obtain the loan with a 6.5% interest rate. Plaintiffs were informed that if GMAC had removed the negative credit references as promised, they would have been able to obtain the same loan at 5.75% at a savings of $51,502.73 over the life of the loan. If GMAC had removed the negative credit references in January 2005 as promised, they would have been able to obtain the same loan at an even lower interest rate with even more savings over the life of the loan. Desperate to obtain the loan in order to close on the Thailand property and pay off higher interest rate credit cards, the Hechts closed on the loan at the 6.5% interest rate on April 29, 2005.

22.

Finally able to close on the property in Thailand, the Hechts contacted the seller to arrange a new closing date. The seller informed the Hechts that the property had been transferred to someone else. According to a Thai appraisal of the property, the property was worth approximately $60,000 more than the contract price. Plaintiffs also lost their $5,000 earnest money deposit.

23.

Defendant's actions in failing to rectify the inaccurate credit report as expressly agreed, and in advertising both of the Plaintiffs' names in a newspaper of general circulation in Forsyth County constitute a breach of the Settlement and Release Agreement for which Defendant is liable to Plaintiffs for damages. Plaintiffs' damages include, but are not limited to, (i) the additional interest expense of at least $51,502.73 on the loan obtained April 29, 2005; (ii) the difference between the contract price and the fair market value of the Thailand property in the amount of approximately $60,000; (iii) additional consequential and incidental damages in an amount to be proven at trial.

24.

Defendant breached the implied covenant of good faith and fair dealing with Plaintiffs as a matter of contract and as a matter of tort by breaching a duty imposed by law.

25.

Defendant has acted in bad faith, been stubbornly litigious and has caused Plaintiffs unnecessary trouble and expense so as to authorize the award to Plaintiffs of their reasonable attorney's fees incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiffs demand a judgment requiring Defendant to clear their credit as promised, for damages for breach of contract in an amount to be determined at trial, for their reasonable attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11, all costs of this action, and such other and further relief as this Court deems just and proper.

## COUNT II: DEFAMATION

26.

Plaintiffs reallege and restates the allegations contained in paragraphs 1 through 25 of this complaint against Defendant with the same force and effect as if they had been fully restated herein.

27.

Defendant's actions in failing to rectify the inaccurate credit report as expressly agreed, and in advertising the false allegation that the Plaintiffs' defaulted on their mortgage obligations in a newspaper of general circulation in Forsyth County, has irreparably damaged Plaintiffs' reputation and credit. The mortgage was not in default because Defendant had expressly waived non-payment while the parties continued to negotiate towards settlement.

28.

Plaintiffs' credit rating has been ruined and Plaintiffs have been turned down for an important loan due to Defendant's defamation of Plaintiffs' credit reputation. Plaintiffs' move to Georgia and Mr. Hecht's job transfer have been delayed due to their inability to obtain financing caused by Defendant's defamation of their credit reputation.

29.

As Defendant had expressly agreed not to hold Plaintiffs in default while Plaintiffs continued to negotiate in good faith towards a settlement of their claims, and Defendant's loan was paid in connection with the settlement, the continued publication of the loan as delinquent and in foreclosure was false and malicious and constituted libel per se.

30.

Defendant reported Plaintiffs' loan as delinquent in an intentional, malicious, and successful attempt to injure the reputation of Plaintiffs and exposed them to public hatred, contempt, or ridicule.

31.

Defendant published these maliciously defamatory facts to the entire world by reporting them to a consumer credit reporting agency.

32.

As a result of Defendant's acts and omissions, Plaintiffs have endured and suffered, continue to endure and suffer, actual damages and injury, including but not limited to, costs and expenses, severe stress, lost time, mental anguish and suffering, emotional distress, embarrassment, humiliation, and damage to their credit standing and reputation. Plaintiffs' special damages include, but are not limited to, (i) the additional interest expense of at least $51,502.73 on the loan obtained April 29, 2005; (ii) the difference between the contract price and the fair market value of the Thailand property in the amount of approximately $60,000; (iii) additional consequential and incidental damages in an amount to be proven at trial.

33.

Defendant has acted in bad faith, been stubbornly litigious and has caused Plaintiffs unnecessary trouble and expense so as to authorize the award to Plaintiffs of their reasonable attorney's fees incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

34.

Defendant's actions in the commission of the tort of defamation constituted willful misconduct so as to authorize an award of punitive damages. Accordingly,

Plaintiffs seek punitive damages in an amount to be determined by the jury to punish, penalize, and deter Defendant from such wrongful conduct in the future.

WHEREFORE, Plaintiffs demand a judgment requiring Defendant to clear his credit as promised, for compensatory damages for defamation in an amount to be proved at trial, for their reasonable attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11, punitive damages, all costs of this action, and such other and further relief as this Court deems just and proper.

COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

35.

Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 34 of this complaint against Defendant with the same force and effect as if they had been fully restated herein.

36.

Defendant intended to damage Plaintiffs by willfully failing to correct the false credit report and continuing to libel Plaintiffs by advertising a foreclosure after the loan had been paid in full.

37.

Defendant's course of conduct against Plaintiffs was extreme and outrageous.

38.

Defendant's course of conduct caused Plaintiffs to suffer severe emotional distress.

39.

Plaintiffs each seek to recover compensatory damages for their severe emotional distress in an amount to be determined by the enlightened conscience of an impartial jury.

40.

Defendant has acted in bad faith, been stubbornly litigious and has caused Plaintiffs unnecessary trouble and expense so as to authorize the award to Plaintiffs of their reasonable attorney's fees incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

41.

Defendant's actions in the commission of the tort of intentional infliction of emotional distress constituted willful misconduct so as to authorize an award of punitive damages. Accordingly, plaintiffs seek punitive damages in an amount to be determined by the enlightened conscience of an impartial jury to punish, penalize, and deter Defendant from such wrongful conduct in the future.

WHEREFORE, Plaintiffs demand a judgment requiring Defendant to clear his credit as promised, for compensatory damages for severe emotional distress in an amount to be determined by the enlightened conscience of an impartial jury, for their reasonable attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11, punitive damages, all costs of this action, and such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

This the 16th day of May, 2005.

                                                                               Lawrence S. Burnat
Georgia Bar No. 096150
Jason W. Graham
Georgia Bar No. 304595
Attorneys for Plaintiffs

Schreeder, Wheeler & Flint, LLP
127 Peachtree Street, N.E.
1600 Candler Building
Atlanta, Georgia 30303-1845
Telephone: (404) 681-3450
Facsimile: (404) 681-1046
K:\5050\1\Pleadings\First Amended Complaint.doc

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the Defendant in the foregoing matter with a copy of First Amended Complaint via first class mail addressed to:

>John O'Shea Sullivan, Esq.
>Ashby L. Kent, Esq.
>Burr & Forman LLP
>171 Seventeenth Street, NW
>Suite 1100
>Atlanta, Georgia 30363

This the 16th day of May, 2005.

/s/ Lawrence S. Burnat
Lawrence S. Burnat
Georgia Bar No. 096150
Jason W. Graham
Georgia Bar No. 304595
Attorney for Defendant

Schreeder, Wheeler & Flint, LLP
127 Peachtree Street, N.E.
Atlanta, Georgia 30303
Telephone: (404) 681-3450
Facsimile: (404) 681-1046
K:\5050\1\Pleadings\First Amended Complaint.doc